**Tom Taylor TOLG, Appellant,**

v.

**T. Ralph GRIMES, Sheriff of Fulton County, Georgia, Appellee.**

**T. Ralph GRIMES, Sheriff of Fulton County, Georgia, Appellant,**

v.

**Tom Taylor TOLG, Appellee.**

**No. 21661.**

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1966.

Griffin B. Bell, Circuit Judge, dissented.

Donald L. Hollowell, Atlanta, Ga., Jack Greenberg, New York City, James M. Nabrit, III, Derrick Bell, New York City, Howard Moore, Jr., Atlanta, Ga., Sheila Rush, New York City, of counsel, for Tolg.

Albert Sidney Johnson, Asst. Atty. Gen., J. Robert Sparks, Asst. Sol. Gen., Peyton S. Hawes, Jr., Asst. Atty. Gen., Atlanta, Ga., Eugene Cook, Atty. Gen., William T. Boyd, Sol. Gen. Atlanta Judicial Circuit, for Grimes.

Before TUTTLE, Chief Judge, and BELL and COLEMAN, Circuit Judges.

TUTTLE, Chief Judge:

This appeal presents the question whether the passage of the Civil Rights Act of 1964, given the retroactive effect that was given it by Hamm v. City of Rock Hill, South Carolina, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, required the invalidation by a Federal Court on petition for habeas corpus of a State Court conviction under an anti-

trespass statute, invoked by a proprietor for the purpose of preventing access to his restaurant by persons on account of race.

The appeal is from an order denying the petition of appellant for a writ of habeas corpus. United States ex rel. Tolg v. Grimes (No. Dist. of Ga.), 1964, 229 F.Supp. 289. The order was entered prior to the passage of the Civil Rights Act of 1964. However, in denying the writ, the District Court granted appellant a certificate of probable cause and admitted him to bail pending this appeal.

Appellant, who at the time of his arrest, was a 23 year old white graduate teaching assistant at Miami University, Oxford, Ohio, was arrested at Leb's Restaurant in Atlanta, Georgia, when he and thirteen other persons, including eleven Negroes, attempted to enter for lunch. He was one of the same group of persons whose activities resulted in the removal of state prosecutions to the Federal Court and which was discussed by us in Rachel v. State of Georgia, 5 Cir., 342 F.2d 336, cert. granted October 11, 1965, 382 U.S. 808, 86 S.Ct. 39, 15 L.Ed.2d 58. Appellant was indicted and tried upon the charge that he had violated Section 26–3005 of the Georgia Code (Ann.Supp.), Georgia Laws 1960, p. 142.[1]

In every way open to him, Tolg attacked the constitutionality of the Georgia Statute, both on its face, and as applied to him and to persons of the Negro race with whom he was participating at the time of his arrest. He contended, that when applied to places of public accommodation, against persons who were denied access on account of race, the act of arrest and prosecution by the state authorities constituted a deprivation by the State of his rights under the Fourteenth Amendment to the Constitution. In making this contention he asserted a ground of relief which the United States Supreme Court pretermitted in arriving at its decision in Bell v. State of Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822, but which was fully expounded and urged on the Court by three members.[2] It was a doctrine that was equally firmly repudiated by three other members of the Court.[3]

Appellant was convicted by a jury and sentenced by the trial court to serve twelve months of labor on the county public works and to serve six months in jail and to pay a fine of $1000.00. The sentence provided that if, after serving four months, appellant should certify to his intention to obey all of the laws of Georgia and of every other state wherein he might be a resident, the Court would reduce the sentence to the four months served.

Upon conviction and sentencing, Tolg filed a motion in arrest of judgment and a motion for a new trial, by which he again attacked the constitutionality of the statute as applied to him. He was released on bond in the amount of $5,-000.00. In due time the motions were overruled, thus commencing a period of thirty days which, under the Georgia statute, was the time in which a bill of exceptions could be filed. It is not clear from the record the exact cause for the failure of counsel to file their bill of exceptions within the thirty day period, but it is clear that, as found by the trial court in the habeas corpus proceeding, such failure was not due to any wilful

---

1. Ga.Code § 26–3005:

"It shall be unlawful for any person, who is on the premises of another, to refuse and fail to leave said premises when requested to do so by the owner or any person in charge of said premises or the agent or employee of such owner or such person in charge. Any person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor. (Ga.Laws 1960, p. 142.)"

2. See concurring opinion of Mr. Justice Goldberg joined by the Chief Justice and Mr. Justice Douglas. 378 U.S. 226, 286, 84 S.Ct. 1814.

3. See dissenting opinion by Mr. Justice Black, joined by Justices Harlan and White.

intent to bypass the appellate procedures in the State of Georgia. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Apparently counsel relied upon receiving a copy of the written order of the trial court which the judge's secretary, according to her best recollection, testified she had mailed but which, it was testified by counsel, they had not received. In any event, under the Georgia statutes this failure foreclosed any right of appeal to Georgia appellate courts.

On April 20, 1964, Tolg was committed to the custody of the Sheriff and he promptly filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Georgia, contending that he was being held in violation of his federally protected constitutional rights.

Appellant did not file a petition for habeas corpus in the state courts prior to the filing of his application in the United States District Court.

The appellee, the Sheriff of Fulton County, Georgia, in his response, took issue on the merits of appellant's contention touching on his asserted constitutional rights, and moved to dismiss the petition on the ground that appellant had not exhausted his state remedies before filing the petition in the United States court, as required by Title 28, Section 2254, U.S.C.A.[4] The trial court overruled the motion to dismiss, finding that "the unusual circumstances of this case,

including the present confinement of the petitioner by the respondent, constitutes such unusual circumstances as to authorize this Court to entertain the writ."

On the merits of the petition, the trial court found that the State statute was neither unconstitutional on its face nor in its application in the case of a restaurant owner who desired to maintain a racially segregated clientele. Nevertheless, the Court issued its certificate of probable cause and continued the appellant at large under $5,000 bond pending this appeal.

While the case has been pending in this Court, two occurrences of great significance have changed the picture as it was presented to the trial court at the time of the hearing. The first of these was the enactment into law by the United States Congress of the Civil Rights Act of 1964, 78 Stat. 241. The second is the decision of the United States Supreme Court in the case of Hamm v. City of Rock Hill, South Carolina, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, decided December 14, 1964. Stated briefly, Section 201 of the Civil Rights Act defines a restaurant such as was here in issue as a place of "public accommodation within the meaning of this title if its operations affect commerce."[5]

Section 203 of the Act prohibits any person from denying any person the right to patronize such a public accommodation.[6] It also provides that "No person

4. Title 28, § 2254, U.S.C.A.—State custody; remedies in State Courts.
 "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise,

by any available procedure, the question presented."

5. It is not contended here by the State that Leb's Restaurant, a large downtown restaurant in Atlanta, is not such "public accommodation."

6. Section 203 provides:
 "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 201 or 202, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section

shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 * * *."

In cases which were before it on appeal from State courts, the Supreme Court decided in Hamm v. City of Rock Hill, supra, that "the [Civil Rights] Act intervened before either of the judgments under attack was finalized. * * abatement must follow in these state prosecutions." The Court further said, "Rather than a retroactive intrusion into state criminal law this is but the application of a long-standing federal rule, namely, that since the Civil Rights Act substitutes a right for a crime any state statute, or its application, to the contrary must by virtue of the Supremacy Clause give way under the normal abatement rule covering pending convictions arising out of a pre-enactment activity. The great purpose of the Civil Rights legislation was to obliterate the effect of a distressing chapter of our history. This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act." 379 U.S. 306, 315, 85 S.Ct. 384, 391.

Thus, in addition to the original ground for attacking the conviction in the state court, appellant now urges the passage of the Federal Statute as giving him an even clearer right to relief. Relying on the fact that Tolg's sentence of imprisonment and fine have not been completed, (in point of fact it had just started at the time of the filing of this petition) the thrust of the appellant's new argument now is that the Supreme Court gave retroactive effect to the Civil Rights Act in the Hamm case because of a constitutional principle; that any further punishment for pre-enactment violations of state anti-trespass laws would be a violation of his constitutional rights as well as a violation of the precise terms of the statute itself. In support of this position the following language from the Supreme Court's opinion in the Hamm case is apposite:

"Far from finding a bar to the application of the rule where a state statute is involved, we find that our construction of the effect of the Civil Rights Act is more than statutory. It is required by the Supremacy Clause of the Constitution. See Kesler v. Department of Safety, 369 U.S. 153, 172 [82 S.Ct. 807, 818, 7 L.Ed.2d 641] (1962); Hill v. [State of] Florida, 325 U.S. 538 [65 S.Ct. 1373, 89 L.Ed. 1782] (1945). Future state prosecutions under the Act being unconstitutional and there being no saving clause in the Act itself, convictions for pre-enactment violations would be equally unconstitutional and abatement necessarily follows."

Although the trial court found the exceptional circumstances to exist that it considered "render[ed] [state corrective] process ineffective to protect the rights of the prisoner," and thus concluded that it had jurisdiction to consider the application for writ without requiring any further proceedings in the state court, a finding within the discretion of the trial court, which is entitled to great weight here, perhaps, we should deal, in limine, with the matter of exhaustion of state remedies. This we do because, as already noted, Tolg filed no petition for writ of habeas corpus in the State Court, but proceeded directly in the Federal Court when it was apparent that he could do longer proceed by direct appeal in the courts of the state of Georgia by reason of the procedural situation then existing.

■ Unquestionably one of the circumstances which the trial court must have considered relevant in its decision to retain jurisdiction of the habeas corpus proceedings, was the fact that the Georgia courts have historically and consistently given a narrow application to the State statute authorizing the issuance of the writ of habeas corpus.

201 or 202, or (c) punish or attempt to punish any person for exercising or at-

tempting to exercise any right or privilege secured by section 201 or 202.

See Whippler v. Balkcom, 5 Cir., 342 F.2d 388. We think it clear beyond doubt that the Georgia courts would hold that any question raised by this appellant in the trial court and which could have been perfected and passed upon by the State appellate courts, but which was foreclosed by the failure to file a timely appeal, cannot now be raised by habeas corpus in the state of Georgia. Particularly is it true that as we stated in Cobb v. Balkcom, 5 Cir., 339 F.2d 95, "In any event, it follows that we cannot say at this point in the Georgia law that there is a presently existing state remedy available to the appellant" for the raising of the Fourteenth Amendment argument which he presented to the trial court and now urges here. Thus it is, that at the time the habeas corpus petition was filed in the District Court for the Northern District of Georgia, that Court was the only tribunal available to him in which he had a right to be heard on the issues then raised.

As it turns out, appellant's rights on the merits of his petition have been greatly enhanced during the pendency of this appeal.

■ The passage of the Civil Rights Act, and the decision of˙ the Supreme Court in the *Hamm* case present him with an argument on appeal of entirely different dimensions than that presented by him to the State court on his motion in arrest of judgment and to the United States Court on his petition for habeas corpus. It should be noted that Tolg's argument that the Federal statute and the United States Constitution now deprive the State of Georgia of the right to punish him for a pre-enactment charge, may be of such a nature as would justify the hope that the Georgia courts might entertain a petition for habeas corpus to inquire into the legality of his detention, *if the suit were to be filed now* rather than before the passage of the Civil Rights Act. However, this is far from certain, especially in view of the failure of the appellant to preserve his rights of appeal, which failure may be treated by the Georgia appellate courts

as a waiver of such right of appeal, and thus a "finalizing" of his conviction. However that may be, such right to invoke a state remedy even at this time would be partial at most because appellant could not raise the question of his original Fourteenth Amendment rights in the State court. He could raise only the claim that has been validated for him pending the appeal to this Court. We do not consider this an appropriate basis for overruling the District Court's determination that it had jurisdiction in the peculiar circumstances of the case.

But more important than this is the fact that the State, on behalf of the Fulton County Sheriff, frankly concedes the correctness of Tolg's contention that the case should be disposed of on the merits here and now. In its brief the State says:

"While the Appellee does not concede that the district court was correct in overruling his Motion to Dismiss, he does not insist upon his own exception. We feel that the question presented by the appeal is of vast importance; that the questions ultimately involve federal questions for determination by the federal system; and that *nothing would be gained by consuming the time and energy of counsel and the court by procedural shadow-boxing.* Therefore, the Appellee does not now insist upon his Motion to Dismiss. (Emphasis added.)"

■■ It being clear that the principle of exhaustion of state remedies is a matter of comity, not a matter of jurisdiction, Whippler v. Balkcom, 342 F.2d 388, 390, we think it is entirely permissible for the State to waive the failure to exhaust State remedies if it recognizes, as it apparently does in its presentation to this Court, that substantial justice will be furthered by such waiver. Moreover, it is clear that in oral argument before us the State recognized the great uncertainty of the availability of State remedy in the posture in which the present case would stand were we to remand it to the District Court to with-

098

hold action pending the commencement of proceedings in a State court. The State does not here request that we stand aside to present to the Supreme Court of Georgia a further opportunity to expand its concept of habeas corpus jurisdiction as it did in the case of Cobb v. Balkcom, supra, which this Court expressly declined to do. See 339 F.2d at 100.

■ Finally, on the point of exhaustion of state remedies, we make the further observation. It is clear that the only Court that had jurisdiction to grant the relief on the basis of the Fourteenth Amendment rights at the time the petition for habeas corpus was filed was the United States District Court. It concluded that it had jurisdiction and that the rules of comity did not forbid it to exercise the jurisdiction which it had. Now, at this date, more than eighteen months later, it appears that additional grounds for relief may have accrued to the petitioner, which, had they been available at the time the petition was filed in the District Court, may have warranted the belief that the State habeas corpus court would assume jurisdiction and decide the merits of the claim under these new grounds. We think the right of the petitioner to proceed in the Federal Courts must be measured as of the time his petition was filed and not as of the time the appeal is determined here. Especially must this be so when, as is true in this case, State court habeas corpus could *even now*, if available, be used for reaching only a part of the present grounds of attack of appellant's detention by the State authority.

We turn now to the merits of the appeal. The principal question here is whether, following a conviction under the Georgia anti-trespass statute, assumed to be valid at the time of the trial and sentence, the subsequent enactment by Congress of the Civil Rights Act invalidating the application of the anti-

trespass statute in the circumstances here present, and the later ruling by the United States Supreme Court that the passage of the Civil Rights Act, by reason of retroactive application, invalidates all "pending convictions", requires the release of such convicted person from State custody.

■ The second question, i. e., whether there was merit in the original contention made by appellant that the application of the Georgia anti-trespass statute in the circumstances of this case violated his Fourteenth Amendment rights, will not be reached because of the disposition we make of the case on the point first mentioned. Traditionally, of course, courts do not consider the question of the constitutionality of an Act where the result contended for can properly be reached by an interpretation of a statute. See Hamm v. City of Rock Hill, 379 U.S. 306, 316, 75 S.Ct. 384.

In the *Hamm* case, the Supreme Court abated convictions arising in South Carolina and in Arkansas for state trespasses occurring before the adoption of the statute, and which resulted in convictions and sentences imposed by the State courts prior to enactment of the Civil Rights Act. In doing so, the Court held that the State convictions, even though occurring prior to the enactment of the Federal statute, were "unconstitutional." The Court said:

"Future state prosecutions under the Act being unconstitutional and there being no saving clause in the Act itself, *convictions for pre-enactment violations would be equally unconstitutional* and abatement necessarily follows. (Emphasis added)"

■ It being clear that a *conviction* which is "unconstitutional" is ordinarily void and of no legal effect,[7] then it follows as a matter of course that such conviction may be attacked by habeas corpus even though the *case* may not still

7. The grounds of unconstitutionality are not denial of procedural due process "that has no bearing on guilt" such as was found in Linkletter v. Walker, 381

U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, not to warrant retrospective application. The ground here is want of authority to try and convict the accused.

be "pending" in the ordinary sense of the term. It is usually a conviction which has become "final" that is the subject of attack in the habeas corpus court. The classic example of the recognized basis of such an attack is that the conviction was unconstitutional.

Further language of the Supreme Court in the *Hamm* case is of significance:

"* * * Since the provisions of the Act would abate all federal prosecutions it follows that the same rule must prevail under the Supremacy Clause which requires that a contrary state practice or state statute must give way. Here the Act intervened before either of the judgments under attack was finalized. Just as in federal cases abatement must follow in these state prosecutions. Rather than a retroactive intrusion into state criminal law this is but the application of a long-standing federal rule, namely, that since the Civil Rights Act substitutes a right for a crime any state statute, or its application, to the contrary must by virtue of the Supremacy Clause give way under the normal abatement rule covering pending convictions arising out of a pre-enactment activity. The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history. This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act."

This language appears to be about as broad as could be used by the Court to indicate that any conviction which, if obtained in a state court following the Civil Rights Act would be invalidated by the federal statute, must be abrogated and voided completely, whether or not the *case* is still pending, if the *conviction* is still pending. This is still a "pending conviction," since the sentence resulting from it has not been served. We think the entire scope of the opinion in Hamm v. City of Rock Hill requires that this conviction be held to be void and of no effect.

Moreover, even if the Supreme Court had not considered such convictions as being "unconstitutional" we conclude that the statute itself, on its face, requires that to the extent that the sentence meted out to Tolg has not been served it must be abated.

In the case of Dilworth v. Riner, 5 Cir., 343 F.2d 226, this Court said: "The right to public accommodations on a non-discriminatory basis is a federal right the claim to which, Congress has said, shall not be the subject matter of punishment. * * * [appellants] may simply not be punished." 343 F.2d 226, 231. Thus it appears that Congress intended, as such intent was found by the Supreme Court in *Hamm,* not only that all prosecutions as to which there was still procedural steps to be taken should be abated, but that also all punishment should be abated where the cases were not "finalized" or where the *convictions* were pending or where, regardless of procedural terminology, punishment was still being meted out. This follows from the language of the statute that says, "No person shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202." Under the Supremacy Clause of the Constitution this overrides any otherwise legal effort by a state to punish appellant Tolg for exercising his right to seek service at Leb's Restaurant and his refusal to leave when requested by the owner, the offense for which he was convicted under the state law.

As determined by the Supreme Court in the *Hamm* case, "The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history." The prosecution which resulted in conviction of the appellant here was inconsistent with the purposes of the Act. We are required under the *Hamm* decision to remove this inconsistency. The Supreme Court has stated the manner in which this must be done:

"This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act." 379 U.S. 315, 85 S.Ct. 391. This being a pending conviction, it thus becomes our duty to hold it void and to require that the District Court grant the writ and order the release of the appellant under this indictment.

The judgment is reversed and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

COLEMAN, Circuit Judge (concurring):

I cannot see that this decision presents any threat to our system of federalism. On the contrary, we have accepted, honored, and acted upon the stipulation of the State. We have disposed of this case in keeping with the mandates of the Congress and of the Supreme Court. We have refrained from the "procedural shadow boxing" so aptly referred to by the State Attorney General. I therefor concur completely in the foregoing opinion.

GRIFFIN B. BELL, Circuit Judge (dissenting):

I respectfully dissent. Future historians concerned with the demise of our system of federalism may well consider this decision a significant step in that loss. It is an even sharper departure from that system than was the federal retention of jurisdiction in Rachel v. State of Georgia, 5 Cir., 1965, 342 F.2d 336, cert. granted, October 11, 1965, 382 U.S. 808, 86 S.Ct. 39, 15 L.Ed.2d 58. All that is involved here is a state case not yet considered by the state courts although an available remedy there awaits appellant. No state relief whatever has been sought. The Georgia courts are not only deprived of the comity privilege to pass on appellant's claim but the decision is in the face of an express congressional interdiction that such relief as the majority has granted " * * * shall not be granted * * * " because there

has been no exhaustion of a presently available state court remedy. 28 U.S. C.A. § 2254; and see Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

The *ratio decidendi* of the majority appears to rest mainly on dire circumstances rather than law but appellant would suffer no loss of liberty while the state court had his claim under consideration. Thus the decision is not only without warrant in law; it is also unnecessary. Appellant has double protection of his right to bail. He is at liberty on bail by order of the federal district court. The Georgia Supreme Court is also careful to preserve the right to bail. For example, state habeas corpus was the procedural vehicle used to gain admission to bail in another civil rights case arising out of the state trial court where this case had its genesis. Jones v. Grimes, Sheriff, 1964, 219 Ga. 585, 134 S.E.2d 790. Moreover, the district court at our direction could continue appellant on bail while he seeks relief in the state court system.

By way of summation, my view is that Georgia has a court system wherein the constitutional right asserted by appellant may be vindicated and her courts should not be avoided or placed in limbo on an *ad hoc* basis.

The circuitous reasoning by which the majority finds power and by which it disregards any semblance of comity is, I think, invalid. It goes like this. There was no available state remedy at the time the petition for habeas corpus was filed in the district court; thus the district court had jurisdiction. Although the district court denied the petition on the grounds that it was without merit, the supervention of the Civil Rights Act of 1964 and the case of Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, appear to have infused merit into appellant's case while it was on appeal. Even if the infused principle was available to appellant in the state courts, nevertheless, the federal district court and now this court has jurisdiction because of the non-meritorious

claim asserted in the district court. This reasoning avoids the fact that the basis and the only basis of the relief now afforded appellant by the majority is the supervening Civil Rights Act and the *Hamm* case, supra; relief that may be obtained in the first instance in the state courts.

The opinion of the majority also hinges on the waiver by the Attorney General of Georgia of any right the state courts may have to adjudicate the questions asserted by appellant and apparently, of any restriction this court may have on its power by 28 U.S.C.A. § 2254, supra. Cf. Warren v. Conner, No. 21,853, now pending in this court, where there is no waiver in a case involving the same question but which was tried in a different state court. This cavalier approach by the office of the Attorney General of Georgia is a new concept in the division of jurisdiction between federal and state courts under the doctrine of comity. It is also a novel expansion of the federal statute governing the power of federal courts to grant habeas corpus to state prisoners. § 2254, supra.

Now the lawyers will decide which court may act. I do not see how we can manage the dual system of courts—federal and state—which are inherent in our federalism on any such basis. Comity, as I understand it, is a form of court self-discipline designed to limit intrusion by the courts of one of the systems into the affairs of courts of the other, and it alone should carry the day here. However, Congress, perhaps unwilling to rely on the exercise of self-discipline by federal courts in the habeas corpus area because of the balance that is drawn in such cases between state and federal laws as well as state and federal courts, and because problems arising from the maintenance of local order are involved, has expressly proscribed the power of federal courts. See § 2254, supra, footnote 4 to majority opinion, together with the gloss of Fay v. Noia, supra. As noted, this statute speaks in terms of " * * * shall not grant

* * * " and it contains no provision whereby counsel or a party may invest the court with authority to grant the writ. This concept of waiver, now that it has received the imprimatur of the court, is freighted with the seeds for creating grave uncertainty in the state judicial process, and ultimately, to severely impair the state court system as it applies to criminal justice.

Our approach should be. to first determine whether there is a state procedural remedy presently available to appellant to claim his right under the Civil Rights Act of 1964, as given retroactive application in Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, not to be further punished. This right springs only from the supervention of the Act, and the *Hamm* case, after the state court trial and after the district court decision denying the relief sought. This is the basis which the majority finds for granting the relief. Cf. Dilworth v. Riner, 5 Cir., 1965, 343 F.2d 226. The question then is which court, federal or state, should now afford appellant relief on this basis. The Georgia Supreme Court has already given effect in cases on direct appeal to *Hamm* and the Civil Rights Act of 1964. Bolton v. State of Georgia, 1965, 220 Ga. 632, 140 S.E.2d 866. May rights arising thereunder also be claimed in the Georgia courts by way of habeas corpus?

In this connection, and preliminarily, we turn our attention to the question of whether appellant may avail himself of the remedy of state habeas corpus and continue at liberty on bond. The Georgia Supreme Court has answered this question in the affirmative. A Georgia court will hear and decide a petition for habeas corpus on its merits even where the applicant for habeas corpus may have been improperly admitted to bond. Sanders v. McHan, 1949, 206 Ga. 155, 56 S.E.2d 281. See also Soviero v. State, 1964, 220 Ga. 119, 137 S.E.2d 471. Here appellant, having been admitted to bond by the District Court, is not presently incarcerated but he is in the constructive

custody of the sheriff of Fulton County, Georgia.

And as we recently stated, the current law of exhaustion is that an applicant for the writ must exhaust his state remedies before applying for federal habeas corpus unless the state remedy is foreclosed, or is so ineffective or inadequate or uncertain as to amount to an absence of state remedy. Whippler v. Balkcom, 5 Cir., 1965, 342 F.2d 388; Smart v. Balkcom, 5 Cir., 1965, 352 F.2d 502. Proceeding then to the state remedy question, we are aware of the narrowness of the scope of habeas corpus in Georgia. Cobb v. Balkcom, 5 Cir., 1964, 339 F.2d 95; Whippler v. Balkcom, supra; Smart v. Balkcom, supra. It is available when the trial court was without jurisdiction or where it exceeded its jurisdiction in making the order, rendering judgment or passing sentence to the extent that the order, judgment or sentence is void. Deprivation of counsel is treated as rendering the judgment void. See *Whippler* and *Smart,* supra. A sentence which exceeds the jurisdiction of the court is void. See *Smart,* supra, and Balkcom v. Defore, 1964, 219 Ga. 641, 135 S.E.2d 425. But the question before us, and which should be before the Georgia courts on remand from the fact that the state remedy was not exhausted, does not fall within the scope of the jurisdiction of the trial court. It takes the nature of illegal detention or restraint.

This stems from the fact that § 203(c) of Title II of the Civil Rights Act of 1964 provides that "[n]o person shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 * * *". § 201, of course, is the equal enjoyment of public accommodations section. Cf. Dilworth v. Riner, supra. A situation where a prisoner contends that he has executed the sentence imposed and is being illegally detained is analogous. The remedy of habeas corpus is clearly available in Georgia in such a situation. See Goble v. Reese, 1959, 214 Ga. 697, 107 S.E.2d 175. There the court was satisfied to rely for jurisdiction on the Georgia statute governing who may "sue out" a writ of habeas corpus:

"Any person restrained of his liberty under any pretext whatever * * * may sue out a writ of habeas corpus to inquire into the legality of such restraint." Ga.Code § 50–101.

Also somewhat analogous are cases involving the use of habeas corpus to determine the legality of the restraint of a person incarcerated for allegedly breaching a condition of a pardon. See Pippin v. Johnson, 1941, 192 Ga. 450, 15 S.E.2d 712, Pappas v. Aldredge, 1941, 192 Ga. 482, 15 S.E.2d 718. In the second of these cases, *Pappas* was convicted on a charge of operating a lottery and sentenced to imprisonment. While his conviction was pending on review and he was at liberty under a supersedeas bond, he procured a pardon and dismissed his appeal. The pardon was conditioned upon his paying a fine of $50.00 and obeying all of the laws of Georgia, or of any other state and of the United States. The pardon reserved in the governor the right to revoke the same at his pleasure. Having failed to pay the $50.00 fine, the sentencing court issued a rule on the question of whether his supersedeas bond should be forfeited. He failed to appear and his bond was forfeited. He then tendered the $50.00 fine to the sheriff who refused the tender. He was taken into custody and brought a habeas corpus proceeding against the sheriff. His contention on the habeas hearing was that he turned the money over to his attorney with which to pay the fine, and that the attorney failed to pay it. On the testimony of the attorney that this was not so, the trial court entered judgment remanding Pappas to the custody of the sheriff. This judgment was affirmed on appeal, but the case, as does the *Pippin* case, stands for the proposition that the legality of detention or restraint may be tested by a petition for a writ of habeas corpus. Thus Georgia has a presently available remedy for appellant and it should be utilized.

Elan may have its place in some areas of life; it is hardly a basis for maintaining the delicate dual court aspect of federalism. It is not compatible with stability in the law; something devoutly to be desired in a country dedicated to ordered liberty.