Mario **OFFNER**, Appellant,

v.

**SHELL'S CITY, INC.**, Appellee.

No. 23612.

United States Court of Appeals
Fifth Circuit.

April 24, 1967.

Howard W. Dixon, Tobias Simon, Alfred Feinberg, Miami, Fla., for appellant.

Charles R. Stack, Louis L. LaFontisee, Jr., High, Stack & Davis, Miami, Fla., for appellee.

Before PHILLIPS,* THORNBERRY and DYER, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge:

Offner brought this action against Shell's City, Inc., seeking an injunction restraining Shell's from withholding or depriving him of the rights guaranteed him by §§ 201 and 202 of the Civil Rights Act of 1964, (78 Stat. 243, 244, 42 U.S.C.A. Ch. 21, §§ 2000a and 2000a–1).[1]

From an order dismissing the action, Offner has appealed.

The complaint alleged these facts: Offner is a member of the white race. Shell's owns and operates a department store in Dade County, Florida, and maintains therewith a restaurant principally engaged in selling food for consumption on the premises. The restaurant serves food to transients and interstate travelers; and a substantial part of the food served by it has moved in interstate commerce. In August, 1960, Offner joined in a picket line in front of the restaurant to protest racial segregation in the restaurant. On that date and prior thereto, Offner had been a customer of the restaurant. The day following the picketing, Offner was advised he was barred from the restaurant premises. He took the matter up with the manager of the restaurant and the latter countermanded such order. About four years later, the manager died and Offner was again notified he was barred from the restaurant premises. Offner brought the matter to the attention of the new manager and he countermanded such order. The restaurant adopted a policy of integration and for about two years Offner patronized the restaurant and met there with business associates and with his customers. On occasions he took negro associates and customers to the restaurant.

The cashier and other employee personnel of the restaurant were bitterly opposed to integration of the restaurant and its facilities. Because Offner on one occasion had lunch at the restaurant with a former president of the N.A.A.C.P. and on other occasions brought his negro friends and customers into the restaurant, such employee personnel believed Offner had instigated the efforts in 1960 to integrate the restaurant and open its services and facilities to members of the negro race.

On November 27, 1965, Offner was threatened with being barred from the restaurant. He was allowed in the restaurant, but he was not served with food. Upon inquiry, he learned that the former manager had been succeeded by a new manager. The latter refused to countermand the order refusing service to Offner. He made several attempts, the last on December 4, 1965, to get the order countermanded, but failed, and was threatened with arrest for disorderly conduct by the manager. On December 4, 1965, he and his wife entered the restaurant and the manager again threatened him with arrest.

This suit was commenced on December 20, 1965.

The gist of the complaint is set forth in paragraph 12 thereof, which reads:

"That the plaintiff (Offner) has been denied the full and equal enjoyment of the goods, services, facilities, privileges and advantages of a place of public accommodation on the basis of discrimination, based upon plaintiff's assistance to members of the Negro race who had heretofore sought to end discrimination on these premises."

The trial court held that the 1964 Civil Rights Act does not provide for relief, unless the complainant has been discriminated against because of his race, color, religion or national origin, hence, the complaint did not state a claim upon which relief could be granted.

---

* Of the Tenth Circuit, sitting by designation.

1. See also § 203, 78 Stat. 244, 42 U.S.C.A. Ch. 21, § 2000a–2.

After appellant's brief was filed in this court, Shell's filed a motion to dismiss the appeal on the ground it was moot. The motion was accompanied by a supporting affidavit of Edward L. Young, which averred these facts:

On August 26, 1966, the date of the affidavit, Young was and for 12 years prior thereto had been a managerial employee of Shell's. On December 26, 1965, he became manager of Shell's restaurant. Since December 26, 1965,[2] Offner has made frequent and regular use of all of the restaurant facilities on a continuous basis, without restriction, limitation or interference by any of the restaurant managerial personnel, or any employees or agents of Shell's.

It is significant that the right of Offner to use the services and facilities of the restaurant from which he was debarred on November 27, 1965, was not restored until six days after the instant action was commenced, and that the affidavit does not state that if this appeal is dismissed, Offner thereafter will continue to be permitted to use the services and facilities of the restaurant and that the employee personnel, who heretofore were active in debarring Offner from the premises, will not be permitted in the future to interfere with Offner's enjoyment of the services and facilities of the restaurant.

■■ The power to grant injunctive relief survives the discontinuance of the illegal conduct sought to be enjoined. The purpose of an injunction is to prevent future illegal and wrongful acts. The respondent's past conduct is a relevant factor to be considered. Here, in 1960, Offner was debarred from using the services and facilities of the restaurant. Later, the order debarring him by restaurant personnel was countermanded by the management. Four years later, he was again debarred and later the order debarring him was again countermanded. On November 27, 1965, he was again debarred by employee personnel and the manager of the restaurant not only refused to countermand the action of the employee personnel, but confirmed and ratified their action and threatened Offner with arrest if he undertook to enter the restaurant. The last order of debarment was not countermanded by the management until December 26, 1965, or about one month later, and six days after the instant action was commenced.

■ In view of such past history and the failure of Shell's to give any express assurance that Offner will not be deprived of the services and facilities of the restaurant in the future, we cannot say that the case is moot.

Here, Shell's restaurant employees, and on one occasion the restaurant manager, sought to punish Offner by denying him the full and equal use and enjoyment of the services and facilities of Shell's restaurant. The services and facilities of the restaurant were not denied to Offner because he is a member of the white race, but because of his association with members of the negro race, and because he joined with negroes in an effort to bring about integration of the restaurant.

Counsel for Offner rely strongly on the decision of this court in Tolg v. Grimes, 5 Cir., 355 F.2d 92. In that case the question presented, as stated by the Court of Appeals, was "whether the passage of the Civil Rights Act of 1964, given the retroactive effect that was given it by Hamm v. City of Rock Hill, South Carolina, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, required the invalidation by a Federal Court on petition for habeas corpus of a State Court conviction under an anti-trespass statute, invoked by a proprietor for the purpose of preventing access to his restaurant by persons on account of race." The appellant, Tolg, was arrested at the restaurant when he and 13 other persons, 11 of whom were negroes, attempted to enter the restaurant to obtain food. At the time of his arrest, Tolg was 23 years old and a member of the white race. The conviction and sentence of

2. Which was six days after the instigation of the present action.

Tolg followed and he sought discharge from custody by habeas corpus in a Federal District Court. In its opinion in Tolg v. Grimes, supra, at page 99, the Court of Appeals said:

"In the case of Dilworth v. Riner, 5 Cir., 343 F.2d 226, this Court said: 'The right to public accommodations on a non-discriminatory basis is a federal right the claim to which, Congress has said, shall not be the subject matter of punishment. * * * [appellants] may simply not be punished.' 343 F.2d 226, 231. Thus it appears that Congress intended, as such intent was found by the Supreme Court in *Hamm*, not only that all prosecutions as to which there was still procedural steps to be taken should be abated, but that also all punishment should be abated where the cases were not 'finalized' or where the *convictions* were pending or where, regardless of procedural terminology, punishment was still being meted out. This follows from the language of the statute that says, 'No person shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202.' Under the Supremacy Clause of the Constitution this overrides any otherwise legal effort by a state to punish appellant Tolg for exercising his right to seek service at Leb's Restaurant and his refusal to leave when requested by the owner, the offense for which he was convicted under the state law.

"As determined by the Supreme Court in the *Hamm* case, 'The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history.' The prosecution which resulted in the conviction of the appellant here was inconsistent with the purposes of the Act. We are required under the *Hamm* decision to remove this inconsistency. * * *"

And in the opinion at page 95 the Court of Appeals said:

" * * * Stated briefly, Section 201 of the Civil Rights Act defines a restaurant such as was here in issue as a place of 'public accommodation within the meaning of this title if its operations affect commerce.'

"Section 203 of the Act prohibits any person from denying any person the right to patronize such a public accommodation. It also provides that 'No person shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 * * *.' "

The Court of Appeals ordered the District Court to grant the writ and discharge Tolg from custody.[3]

If Tolg was exercising or attempting to exercise a right secured to him by §§ 201 or 202 of the Civil Rights Act of 1964, when he and 13 other persons, including 11 negroes, attempted to enter the restaurant involved in that case to obtain service of food, then Offner in 1960, when he joined with members of the negro race to compel the restaurant involved in the instant case to desegregate and open its services and facilities to members of the negro race, was exercising or attempting to exercise a right secured to him by §§ 201 or 202 of the Civil Rights Act of 1964.

Here, taking the allegations in Offner's complaint to be true, Shell's from time to time denied him his right to enjoy the services and facilities of its restaurant, a civil right to which he was clearly entitled, in order to punish him for joining with persons of the negro race in an effort to desegregate the restaurant and open its services to negroes in 1960. Such punishment was private in character. In *Tolg* it was public—trial, conviction and sentence for

3. See also, Rachel v. State of Georgia, 5 Cir., 342 F.2d 336; 5 Cir., 343 F.2d 909; aff'd. State of Georgia v. Rachel, et al., 384 U.S. 780, 86 S.Ct. 1783, 16 L. Ed.2d 925.

trespass—but the charge against Tolg was invoked by the owner of the restaurant. Section 203 clearly embraces wrongful actions by private persons as well as by the State. It reads:

"No person shall * * * punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202."

We hold that the instant case is ruled by the decision of this court in Tolg v. Grimes, supra.

Reversed and remanded for further proceedings in accordance with the views herein expressed.