**Sammie FELDER, Jr., Petitioner-Appellee,**

v.

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellant.**

No. 82–2025.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1982.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Peter Buscemi, Washington, D.C., Todd D. Stern, New York City, for petitioner-appellee.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

## I. *Introduction:*

This is an appeal by the State of Texas from an order dismissing a prisoner's application for a writ of habeas corpus without prejudice in order to permit him to exhaust his state remedies. The State claims that the court below erred in refusing to accept the State's explicit waiver of the exhaustion of state remedies requirement. For the reasons outlined below, we reverse and remand.

## II. *Facts and Disposition Below:*

Sammie Felder was convicted of capital murder in 1976 and was sentenced to death. In 1980, following rejection of his appeals in the state courts, Felder sought federal habeas corpus relief, alleging numerous constitutional grounds as to which he had already exhausted available state remedies. In September, 1981, Felder amended his petition to include three additional, unexhausted grounds for relief. Since his petition was now "mixed," containing both exhausted and unexhausted claims for relief, Felder moved for dismissal of the petition without prejudice in order to pursue his new grounds for relief in the state courts. In an effort to expedite resolution of the case, the state expressly waived the exhaustion requirement in the district court.

The magistrate to whom the matter was referred recommended dismissal, relying on the policies underlying *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir.1978) (en banc). In his memorandum and recommendation, the magistrate stated: "It is plain that exhaustion exists merely for the benefit of the state judiciary. Whether such a waiver under these circumstances by the respondent would impede, in general, the state judicial process is not clear. It would in the court's estimation be inconsistent with the *Galtieri* rule." The district court adopted the magistrate's findings and recommendation and dismissed the habeas petition without prejudice.

The sole question presented for our determination is whether the state may explicitly waive the exhaustion requirement in federal habeas corpus proceedings under 28 U.S.C. § 2254 (1976).[1]

## III. *Analysis:*

Because the legislative history of § 2254, S.Rep. No. 1559, 80th Cong., 2d sess., 10 (1948), contains no reference to state waiver of the exhaustion requirement, it is most likely that Congress never even considered this problem. We must therefore analyze the policies underlying the statute to decide this issue. *Rose v. Lundy,* 455 U.S. 509, 516–17, 102 S.Ct. 1198, 1202–03, 71 L.Ed.2d 379 (1982).

---

1. Section 2254 in part provides:

    "(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

    (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

    Recently, a panel of this court expressly reserved judgment on the issue of express waiver. *Baxter v. Estelle,* 614 F.2d 1030, 1033 n. 3 (5th Cir.1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981).

The doctrine of exhaustion is rooted in considerations of federal-state comity. "[T]he exhaustion requirement is an accommodation of the federal system to give the state the initial opportunity to decide (and correct if need be) alleged violations of federal constitutional rights. . . . The exhaustion rule does not relate to the jurisdiction of the federal court but rather addresses the appropriate exercise of that jurisdiction in light of our unique American system of dual sovereignty." *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir.1980). *See Rose v. Lundy,* 102 S.Ct. at 1203; *Fay v. Noia,* 372 U.S. 391, 419, 83 S.Ct. 822, 838, 9 L.Ed.2d 837 (1963); *Darr v. Burford,* 339 U.S. 200, 204–05, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950); *Galtieri v. Wainwright,* 582 F.2d at 353–54; *Houston v. Estelle,* 569 F.2d 372, 375 (5th Cir.1978) ("[i]n deciding whether the merits . . . are properly before us, we must be mindful that the question is not one of federal power, but of equitable discretion"). *See generally* 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4264 (1978); Developments, Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1093–94 (1970).

■ The nature of the exhaustion requirement is clearly relevant to the issue of whether it can be waived. "If exhaustion goes to the jurisdiction of the federal court, then the state could not waive it any more than a party can waive any other jurisdictional requirement." Wright, Miller & Cooper, *supra,* at 652. Exhaustion, however, is not a question of subject-matter jurisdiction, and a court of appeals need not raise it sua sponte. *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981). Nonetheless, several circuit courts, while acknowledging the principles of comity underlying the rule, have used language so broad as to preclude waiver, effectively elevating the rule to one of jurisdiction. Thus, the Third Circuit, with one judge dissenting, held that state prosecutors cannot concede or waive the exhaustion requirement. *United States ex Rel. Trantino v. Hatrack,* 563 F.2d 86, 96 (3d Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978). The First Circuit, *Needel v. Scafati,* 412 F.2d 761, 766 (1st Cir.), *cert. denied,* 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969), Second Circuit, *United States ex rel. Sostre v. Festa,* 513 F.2d 1313, 1314 n. 1 (2d Cir.), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975), and the Ninth Circuit, *Sweet v. Cupp,* 640 F.2d 233, 237 n. 5 (9th Cir.1981), have similarly held that the state cannot waive the exhaustion requirement.[2]

Those courts which have concluded that the state may not waive the exhaustion requirement base their holdings on the comity owed the state courts, as distinguished from that owed the state attorneys general:

> Exhaustion . . . serves an interest *not* of state prosecutors but of state courts. It follows, therefore, that the state court interest which underlies the exhaustion requirement of § 2254(b) *cannot* be conceded or waived by state prosecutors—for the state court interest in having "an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" is simply not an interest that state prosecutors have been empowered to yield. "Waiver," like "concession," is not a talisman, the incantation of which will cause the exhaustion requirement to disappear. That requirement remains.

*Trantino,* 563 F.2d at 96 (emphasis in original) (footnote omitted).

Other courts have reached opposite conclusions. Thus, in *Jenkins v. Fitzberger,* 440 F.2d 1188 (4th Cir.1971), the Attorney General of the State of Maryland expressly

---

2. The position of the Eighth Circuit is unclear. *Compare Collins v. Auger,* 577 F.2d 1107, 1109 n. 1 (8th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979) (federal courts may in the interests of justice and expedition accept waiver of exhaustion by the state) *with Davis v. Campbell,* 608 F.2d 317, 320 n. 10 (8th Cir.1979) (noting that the prior recognition of waiver was dicta, and specifically reserving the issue). *But see Batten v. Scurr,* 649 F.2d 564, 568 (8th Cir.1981) ("while this circuit has never expressly held that [the conduct of the state in not raising the issue of exhaustion] is sufficient for a waiver, . . . it is strong indication that the state believes that its interests have been vindicated.").

requested the district court to reach the merits of an unexhausted habeas petition. The Fourth Circuit held that "[s]ince the exhaustion requirement of 28 U.S.C. § 2254 'is not a jurisdictional concept but simply a flexible matter of comity,' we think the federal courts may in the interest of justice and expedition accept waiver of exhaustion by the state." 440 F.2d at 1189 (citations omitted). *See also Kelly v. State of North Carolina,* 276 F.Supp. 200, 205 (E.D.N.C. 1967) ("since the rule is one of comity, observed in order to avoid unseemly collisions by allowing state courts the first opportunity to review alleged state abuses of federal constitutional rights, then the requirement is a proper one for waiver, should the state, in its discretion, choose to waive it.").

Several cases decided by this court indicate a willingness to give effect to an express waiver by the state. In *Tolg v. Grimes,* 355 F.2d 92 (5th Cir.1966), the state, recognizing the great uncertainty of the available state remedies, made an explicit waiver of the exhaustion requirement. This court accepted the waiver, holding: "It being clear that the principles of exhaustion of state remedies is a matter of comity, not a matter of jurisdiction, we think it is entirely permissible for the State to waive the failure to exhaust State remedies if it recognizes, as it apparently does in its presentation to this Court, that substantial justice will be furthered by such waiver." 355 F.2d at 97.

*Warren v. Connor,* 365 F.2d 590 (5th Cir. 1966), involved a fact situation substantially similar to that in *Tolg, supra.* In *Warren,* the State Attorney General admitted the lack of an available state remedy. The court held that "[t]he circumstances which compelled us to this conclusion [assume jurisdiction to pass on the merits of the habeas petition in *Tolg*] are likewise present here, including the State's waiver of the failure to exhaust state remedies, or more appropriately, the State's candid recognition of the uncertainty of the availability of state remedies." 365 F.2d at 591.

Of course, both *Tolg* and *Warren* are distinguishable from the present case in that the availability of adequate state remedies is not an issue here. Here the State, in a desire to expedite resolution of this case, has waived the exhaustion requirement despite the availability of adequate remedies in state courts.

In *Houston v. Estelle,* 569 F.2d 372 (5th Cir.1978), the State explicitly stated at the trial that it had no objection to the defendant's failure to exhaust state remedies. The district court reached the merits in that case. On appeal, counsel for the State conceded that the State was satisfied with the procedural posture of the case. This court held: "Since the exhaustion requirement is non-jurisdictional, it may be waived by the State, and we may give consideration to the expenditure of federal judicial resources below. . . . [T]he State has never even made the argument which prevails, if at all, only as a matter of comity and has instead acquiesced in the expenditure of substantial resources in litigating the merits. In these circumstances, we hold that Houston's claim is properly before us. To hold otherwise . . . would be to elevate a rule of equitable discretion into one of jurisdiction." 569 F.2d at 375–76 (citations omitted).[3]

With these principles in mind, we now turn to the issue before us. As mentioned earlier, the underlying principle in these cases holding that the state may not waive the exhaustion requirement is the belief that notions of comity demand respect to state courts, as opposed to the attorneys general of the states. In order to determine whether the judicial branch of government is, in fact, owed such overwhelming deference, we must examine the history and development of the doctrine of comity in our jurisprudence.

The doctrine of comity, also known as comity of nations, had its origins in interna-

**3.** We note that the jurisdictional holding in *Houston v. Estelle* fits comfortably within the holding in *Galtieri* regarding appellate jurisdiction where a district court erroneously reaches the merits of a mixed petition. 582 F.2d at 360–62. *See e.g., Grooms v. Wainwright,* 610 F.2d 344, 347 (5th Cir.), *cert. denied,* 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980).

tional law. Although the cases abound in definitions and explanations of comity, one of the earliest, written by Justice Gray, provided the following definition:

No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' Although the phrase has been often criticised, no satisfactory substitute has been suggested.

"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory *to the legislative, executive, or judicial acts* of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895) (emphasis added).

In an earlier case, involving the enforceability of corporate contracts outside the state of incorporation, Chief Justice Taney emphasized the concept of comity as a relationship between nations:

The comity ... extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy, or prejudicial to its interests. But it contributes so largely to promote justice between individuals, *and to produce a friendly intercourse between the sovereignties to which they belong* that courts of justice have continually acted upon it, as a part of the voluntary law of nations. It is truly said, in Story's Conflict of Laws, 37, that "In the silence of any positive rule, affirming, or denying, or restraining the

operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interests. *It is not the comity of the courts, but the comity of the nation which is administered,* and ascertained in the same way, and guided by the same reasoning by which all other principles of municipal law are ascertained and guided."

*Bank of Augusta v. Earle,* 38 U.S. 519, 589 (13 Pet.), 10 L.Ed. 274, 308 (1839) (emphasis added). It is clear that the early interpretations of the doctrine of comity of nations focused on the relationships between independent sovereigns, and not between judges. *See Trantino,* 563 F.2d at 103 (Gibbons, J., dissenting).

Today, "[t]he policies of comity that underlie exhaustion are very similar to the policies that underlie the doctrine of 'Our Federalism' [referring to the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny] requiring federal courts in many circumstances to refrain from interfering with state proceedings." 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4264, at 654 (1978). *Cf. Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 479, 97 S.Ct. 1898, 1903, 52 L.Ed.2d 513 (1977) ("*Younger* ... [and its progeny] express equitable principles of comity and federalism.")

It is significant, therefore, that in a case arising in the context of a *Younger* abstention, where the state voluntarily chose to pursue its case in a federal forum, the Supreme Court said:

It may not be argued, however, that a federal court is compelled to abstain in every such situation. If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system. In the present case, Ohio either believes that the District Court was correct in its analysis of abstention or, *faced with the prospect of lengthy administrative appeals fol-*

*lowed by equally protracted state judicial proceedings,* now has concluded to submit the constitutional issue to this Court for immediate resolution. In either event, under these circumstances *Younger* principles of equity and comity do not require this Court to refuse Ohio the immediate adjudication it seeks.

*Hodory,* 431 U.S. at 480, 97 S.Ct. at 1904 (emphasis added); *see also* 17 Wright, Miller & Cooper, *supra,* at 654.

■ We conclude that this analysis applies equally to the federal habeas proceeding before us. As in *Hodory, supra,* the State has chosen a federal forum because it explicitly wishes to avoid lengthy and protracted state judicial proceedings. We see no reason why a federal court, in the name of comity, should refuse to abide by the State's wishes. This conclusion is supported by our analysis of the doctrine of comity as applying to proper relations between sovereign states, rather than between judicial systems.[4]

The recent Supreme Court holding in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), as well as the policies outlined in *Galtieri,* do not mandate a different conclusion. Neither *Lundy* nor *Galtieri* addressed or even contemplated the issue of waiver by the state. We agree with Professors Wright, Miller and Cooper that "[t]he policies that the exhaustion rule serves are important ones, . . . [but a court] need not make a fetish of exhaustion." 17 Wright, Miller & Cooper, *supra,* at 653–54.

We hold that the state may explicitly waive the exhaustion requirement in federal habeas corpus proceedings under 28 U.S.C. § 2254.

IV. *Conclusion*

For the reasons outlined above, the judgment of the district court is REVERSED with instructions to reach the merits of Felder's habeas petition.

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

I write separately, but briefly, only to raise to the explicit a concern implicit in Judge Thornberry's scholarly opinion.

My difference with decisions that a state cannot waive the exhaustion requirement is basic. For example, *United States ex rel. Trantino v. Hatrack,* 563 F.2d 86 (3d Cir. 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978), reasons that comity vindicates the interest of state courts and, accordingly, may be waived only by the courts and may not be waived by prosecutors. Yet, I understand comity to express federalism by deference to the sovereign interests of a state. In matters of habeas, comity is perforce expressed by allowing the courts of the state to examine habeas petitions first. It does not, however, follow in turn that such deference elevates the judicial branch of state government to sovereign status. That is, comity, in matters of habeas, is expressed by deferring to state courts in the sequence of review, but it does not necessarily follow that only those courts have the power to waive that opportunity first to decide. It is the state that enjoys the sovereign interest, not its courts. Assuming the state, qua sovereign, authorizes it to be made, a decision that its sovereign interests are best served by immediate prosecution of a petition in the federal court can hardly be overturned by the federal courts in the name of comity. Implicit in such reasoning is the idea that the federal government may decide how the state sovereign interest in enforcing its police power should be vindicated. Refusing a state the right to waive a benefit conferred in deference to its sovereignty stands sovereignty on its head. While that statement is concededly an abstraction, it is far more

---

4. We note that a somewhat different line of cases decided by this court hold that a failure by the state to raise the defense of lack of exhaustion at the proper time constituted waiver. *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981); *Messelt v. Alabama,* 595 F.2d 247, 250–51 (5th Cir.1979). Although these

cases do not directly support an express waiver theory, the policies which allow a "waiver through negligence" would appear to allow an express waiver. To reach a contrary conclusion would only lead to illogical and unmanageable results.

relevant than an *ipse dixit* statement that only the courts may waive the right first to decide.[1] Stating that only state courts may waive has, to my ear, a dissembling ring. I am unaware of any process by which a court may do so. The effect is to achieve a rigidity of concept not unlike jurisdiction but calling it by another name.

No one here suggests that the Attorney General of the State of Texas is unauthorized by Texas law to express the state sovereign's decision. The existence of authority to decide is a relevant inquiry, but it is one thing to ask who speaks for the state, and quite another to say that no one may or that the state cannot decide who may. Nor can it be an answer then to suggest that permitting waiver would allow the state to bypass its own courts to the "detriment of comity." That approach confuses the means of expressing comity with the essence of comity itself. It is a confusion that timidly refuses to give comity full expression and in doing so strikes at its heart. That is, it undertakes to accept its legitimacy, yet denies its force—namely the sovereign right of a state to decide how, within constitutional limits, it will enforce its police power. It equally follows that to read *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), as requiring a contrary result achieves a perverse, and I think unintended, result.

Opportunities for manipulation and abuse, if tolerated, can taunt the principle of federalism comity attempts to express. Yet, these opportunities do not flow from the choice between waiver and non-waiver of exhaustion. The opportunities may not be equally distributed, but either choice pays that price. This is so because any "right to waive" exhaustion is no more absolute than the idea of non-waiver. Instead, a court may require that waiver of exhaustion, as any other non-jurisdictional argument, be asserted in an orderly way by a sovereign, as any other litigant.

1. I do not attempt to trace the origin of comity and its judicial development. That exercise is instructive, but it has been well done by Judge

In sum, we must take care that we do not confuse the question of who is authorized to decide for the state if it will waive exhaustion with the concept of the right to waive at all. Reading his opinion as taking that care, I join Judge Thornberry.

Thornberry here and Judge Gibbons in *Trantino,* 563 F.2d 86, 98.