**William Lee THOMPSON,**
**Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT,**
**Respondent-Appellant.**

**No. 82–6052.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1983.

Rehearing and Rehearing En Banc
Denied Oct. 12, 1983.

Calvin L. Fox, Asst. Atty. Gen., State of Fla., Dept. of Legal Affairs, Miami, Fla., for respondent-appellant.

Kravitz & Von Zamft, Michael Von Zamft, Hialeah, Fla., for petitioner-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and MORGAN, Senior Circuit Judge.

GODBOLD, Chief Judge:

In this habeas corpus case brought by a Florida state prisoner under sentence of death we decide three issues. We hold that a district court having before it a habeas petition containing only exhausted claims may continue the case at the petitioner's request pending his presenting to the state courts other claims that are not included in the petition and have not been exhausted. We hold that the state of Florida through its attorney general may waive the requirement of 28 U.S.C. Sec. 2254 that a petitioner seeking federal habeas corpus must first exhaust state remedies. And we hold that the district court, in its discretion, may accept or reject the state's waiver.

Based on his guilty plea, petitioner Thompson was convicted in Florida court of first degree murder, kidnapping and sexual battery. As recommended by the sentencing jury, the trial judge imposed the death sentence. The Florida Supreme Court affirmed Thompson's conviction and sentence on direct appeal, placing special emphasis on the extreme brutality of the crime. *Thompson v. State,* 389 So.2d 197, 200 (Fla. 1980). The sentencing court summarily denied Thompson's subsequent motion for collateral relief under Fla.R.Crim.P. 3.850 (West Supp.1983), and the Florida Supreme Court affirmed. *Thompson v. State,* 410 So.2d 500 (Fla.1982). Throughout all these state proceedings Thompson was represented by his trial counsel.[1]

Only days before his scheduled execution Thompson secured new counsel. The new attorney filed a petition for habeas corpus in federal district court, and that court granted a stay of execution. The petition raised numerous constitutional allegations previously addressed to the state courts. Contemporaneously Thompson's attorney filed a motion for continuance, (a postponement of any further proceedings), setting out that there were two grounds for postconviction relief that were not alleged in the habeas petition (entry of an involuntary and unintelligent guilty plea and ineffective assistance of counsel); that these grounds had not been raised earlier because petitioner had been represented throughout previous proceedings by trial counsel; and that these issues needed to be raised in the first instance in state post-conviction proceedings.

The respondent, secretary of the Florida Department of Corrections (hereinafter "the state"), represented by the Florida attorney general, opposed the motion for continuance on the ground of deliberate bypass, *see Fay v. Noia,* 372 U.S. 391, 439, 83

---

1. This is the chronology of Thompson's cases:
 March 1976: offense committed;
 Sept. 1978: conviction and sentence;
 Nov. 1980: affirmed by Florida Supreme Court;
 July 1981: motion to vacate filed, state trial court;
 Aug. 1981: motion denied without hearing;
 Jan. 12, 1982: commutation hearing before governor of Florida;
 Feb. 5, 1982: death warrant signed for execution on March 2, 1982;
 Feb. 11, 1982: denial of motion to vacate affirmed, Florida Supreme Court;
 Feb. 24, 1982: petition for habeas corpus and motion to continue hearing, filed federal district court;
 Feb. 25, 1982: stay of execution granted, federal district court;
 April 1982: federal district court order granting continuance;
 Oct. 1982: permission to appeal granted by this court, appeal expedited.

S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), and abuse of the writ, *see* Rules 9(a) and (b) of Rules Governing Sec. 2254 Cases in U.S. District Courts; *Sanders v. U.S.,* 373 U.S. 1, 15–23, 83 S.Ct. 1068, 1077–1023, 10 L.Ed.2d 148 (1963).

The court conducted a hearing. The attorney general notified the court that the state waived exhaustion of the two unexhausted claims.[2]

The court granted the continuance on the ground that this was the action most consistent with the underlying policies of the exhaustion requirement as applied to a death penalty challenge. The court noted that Thompson had been unable to raise the two new claims until he changed counsel and that he appeared to be making a good faith effort to litigate all of his constitutional claims in one federal case. The court did not give effect to, or even refer to, the state's waiver.

The court certified the case for interlocutory appeal under 28 U.S.C. Sec. 1292(b) and at the request of the state stayed its order pending appeal. We granted leave to appeal.

Before this court the state continues to assert on bypass and abuse of the writ grounds that the court should not have postponed further action on the federal petition. Its main point is, however, that the court erred in not giving effect to the state's waiver of exhaustion.[3] Citing its interest in prompt final determination of the validity of convictions and sentences rendered in its courts, the state says that as a matter of policy it wishes to have available to it the discretion to explicitly waive exhaustion in habeas cases. Moreover, the

state contends that once such a waiver is asserted the federal district court is bound to accept it. These two prongs of the waiver of exhaustion issue go to the heart of the two-tier state-federal system of review of the constitutionality of state criminal convictions and sentences. They implicate the principles of comity and of federalism that underly the two-tier review. And they involve the search for finality in criminal cases.

## I. The power of the court to delay the federal proceedings.

■■■ The state's contention that the district court had no power to grant a continuance of the habeas petition pending before it, or abused its discretion in doing so, is patently without merit. The court has the power to control its docket. So long as it abides by the limits of discretion, it can leave a habeas petition dormant on its docket while the petitioner presents to the state court unexhausted claims.

The express aim of the district court, set out in its carefully phrased order, was to enable all constitutional claims to be settled in one federal habeas proceeding. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), does not forbid the continuance. The petitioner did not file a mixed petition seeking rulings on unexhausted claims. To the contrary, he asked that ruling on his exhausted claims be withheld until unexhausted claims could be presented to the state court and then all claims, properly exhausted, considered in the federal court at one time. This furthers the interests underlying *Rose* rather than impedes them.

---

2. Petitioner contends that the attorney general did not timely tell the court that the state waived exhaustion. If this has any legal significance, it is laid to rest by an order later entered by the district court granting a stay pending appeal. In this order the court recites that the state has waived exhaustion, and refers to an affidavit by the attorney general that placed notice to the court of waiver as having been given before the order granting a continuance was entered. This is a sufficient finding, express or implied, that the court was timely

notified that the attorney general waived exhaustion.

3. The two unexhausted state claims are not included in the federal petition. However, petitioner has triggered federal jurisdiction and has expressed his desire to have all constitutional issues settled in the one federal proceeding. Should the court accept the state's waiver, it can marshal the issues and require petitioner to amend to bring in the non-exhausted claims, thereby affording both state and petitioner the single plenary adjudication that both seek.

The district court could have denied a delay, decided the issues that were alleged in the petition, and left Thompson to the risks of a second federal petition on the two new claims. But no rule or policy required it to do so.

The state's objections to the continuance order are dubious. It argues that under *Fay v. Noia,* Thompson deliberately bypassed state courts by "filing" his unexhausted claims in federal court instead of state court. The short answer is that Thompson did not file his unexhausted claims in federal court but rather seeks to get them ruled on in state court. The state raised an abuse of the writ argument, but declined to pursue it after noting that petitioner was making a good faith effort to avoid piecemeal litigation and to attain the desirable end of one single, plenary federal proceeding.

In its brief the state contends that the motion should have been denied because petitioner failed to raise the issues in his first motion for collateral relief in state courts and because eventually, when presented to the federal court, the two new claims would be barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). At oral argument the state acknowledged that petitioner violated no state procedural rule by failing to raise the two new claims in his first motion for collateral relief and thus that *Sykes* would not be triggered.

The district court did not err in granting the continuance.

**II. The power of the state to waive.**

**(A) Authority of the attorney general under state law.**

Under the Florida constitution, Article 4, Sec. 4, the attorney general is a member of the cabinet and is "the chief state legal officer" of the executive department. By statute, Fla.St.Ann. Sec. 16.01(2) (West Supp.1982), he must perform "such other duties appropriate to his office as may from time to time be required of him by law or by resolution of the Legislature." His responsibilities with respect to litigation are covered in subsections (4) and (5) of Sec. 16.01. The attorney general:

(4) Shall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested, in the Supreme Court and district courts of appeal of this state.

(5) Shall appear in and attend to such suits or prosecutions in any other of the courts of this state or in any courts of any other state or of the United States.

It is obvious that the "such suits" in (5) are those described in (4), "all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested." The statutory mandate to the attorney general is not merely to appear but to "attend to, in behalf of the state, all suits or prosecutions," etc.

 By Florida judicial decisions, the grant of specific state powers to the attorney general does not deprive him of the powers belonging to him under the common law, which include prosecuting "all actions necessary for the protection and defense of the property and revenue of the state...." *State ex rel. Landis v. S.H. Kress & Co.,* 115 Fla. 189, 155 So. 823, 827 (1934). Also, "it is his duty, in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time." *Id.* Moreover, in Florida the office of attorney general is in many respects judicial in character, and he is clothed with considerable discretion. *Id.* 155 So. at 828.

 The attorney general's authority runs beyond responsibility to the government *qua* government. He is responsible to the people. "The Attorney-General is the attorney and legal guardian of the people, or of the crown, according to the form of government." *State ex rel. Davis v. Love,* 99 Fla. 333, 126 So. 374, 376 (1930). When occasion arises "it is his duty to use means most effectual to the enforcement of the laws, and the protection of the people." *Id.* "The Attorney General is the principal law officer of the state." *Id.* 126 So. at 377.

We conclude that under these powers granted by Florida common law, statutes and case law, the state's attorney general had the authority to expressly waive exhaustion of state remedies so that all claims could be presented and decided in one federal proceeding. Florida law gives the attorney general authority to waive exhaustion whether exhaustion, as we hold, promotes the interests of the state as sovereign or, as some other courts have held, promotes only the interests of state courts. *See* note 11 and accompanying text *infra*. We hold that, so far as state law is concerned, the attorney general had authority to speak for the interests of state courts and judges as well as the other instrumentalities of Florida state sovereignty. We believe that if the Florida courts were presented with these same questions they would reach the same conclusions.

(B) Power of the state to waive—federal law.

This brings us to consideration of whether principles of federal law will deny effect to the state's waiver exercised through its attorney general as authorized officer. This requires us to examine the principles of comity and federalism that underlie the two-tier system of collateral review and the exhaustion requirement that has been carried forward into 28 U.S.C. Sec. 2254(b)–(c) (1976).

*(1) The prior history of state waiver of exhaustion.*

In a long line of cases this circuit, the former Fifth, and the new Fifth have held that in the district court a state, through its attorney general, by express act or by failure to raise the issue, can waive petitioner's failure to exhaust. *Westbrook v. Zant,* 704 F.2d 1487, 1492–94 (11th Cir. 1983) (concession in answer that recourse to state courts would be futile); *Shaw v. Boney,* 695 F.2d 528, 529 n. 1 (11th Cir.1983) (failure to raise); *Lamb v. Jernigan,* 683 F.2d 1332, 1335 n. 1 (11th Cir.1982) (concession in answer that resort to state courts would be futile); *Felder v. Estelle,* 693 F.2d

549 (5th Cir.1982) (express waiver); *Houston v. Estelle,* 569 F.2d 372, 375–76 (5th Cir.1978) (statement in answer: "Respondent does not contend that Petitioner has failed to exhaust his state remedies."); *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981) (Unit B) (exhaustion raised in answer, magistrate held petitioner had exhausted, issues not raised before district court on review of magistrate's report and recommendations; held waived); *Messelt v. Alabama,* 595 F.2d 247, 249–51 (5th Cir. 1979) (failure to raise); *West v. Louisiana,* 478 F.2d 1026, 1034–35 (5th Cir.1973) (failure to raise), *aff'd in pertinent part,* 510 F.2d 363 (5th Cir.1975) (en banc). The court of appeals may treat the waiver before the district court as effective and consider the unexhausted claims even though on appeal the state argues non-exhaustion. *Messelt v. Alabama; West v. Louisiana. See generally,* Comment, *State Waiver and Forfeiture of the Exhaustion Requirement in Habeas Corpus Actions,* 50 U.Chi.L.Rev. 354 (1983).

A number of the foregoing cases involve "futility of exhaustion," where there is ineffective state process or an absence of available state process. These are exceptions to exhaustion that have been codified in Sec. 2254(b). It is obvious that when futility is contested there is no waiver of exhaustion. But when the state affirmatively acknowledges futility, or expresses uncertainty, its statement is often considered under the rubric of waiver and accepted without analysis of whether the acknowledgement is substantively correct. Similarly, the state may be asked to take a position on futility and may not respond, and its silence then may be treated as waiver.

At the appellate level we have treated as a waiver the state's failure to raise exhaustion on appeal, *Shaw v. Boney* (failure to raise in district court and on appeal); *Lamb v. Jernigan* (same), and its concession that resort to state courts would be futile. *Warren v. Connor,* 365 F.2d 590, 591 (5th Cir. 1966) (vigorous assertion of failure to exhaust; supplemental statement recognizing

uncertainty of state remedies accepted as waiver); *Tolg v. Grimes,* 355 F.2d 92, 95, 97–98 (5th Cir.1966) (non-exhaustion argued in district court but concession on appeal that recourse to state courts would be futile). Recently we have accepted an express waiver of exhaustion addressed to the court of appeals. *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983); *Westbrook v. Zant.*

In *Felder v. Estelle,* a post-*Rose v. Lundy* decision, the Fifth Circuit held that the district court erred in holding that the Texas attorney general could not, on behalf of the state, expressly waive failure to exhaust in a mixed petition case.[4]

█ *Felder* recognizes that some cases concern "waiver by negligence" or inaction while in others the waiver is express. 693 F.2d at 554 n. 4. Some of the "waiver by inaction" cases are bottomed on what might be called a strict pleading approach. Resorting to principles of estoppel applied generally to other litigants and defenses, the court concludes that the state has waived exhaustion by failing to raise the issue, either in district court or on appeal.[5] Although we prefer to rest our decision on the broader ground that the nature of comity, as incorporated by Sec. 2254 exhaustion, permits the state attorney general to waive exhaustion expressly on behalf of the state, *see* Part II, B, (2) *infra,* the strict pleading cases provide useful guidance. These cases imply the validity of two important conclusions. First, exhaustion is not an inflexible rule of subject matter jurisdiction that the court must raise sua sponte but is rather subject to waiver and estoppel. Second, the

state attorney general may waive exhaustion on behalf of the state.

As *Felder* points out, 693 F.2d at 554 n. 4, to treat express waivers differently from waivers by inaction "would only lead to illogical and unmanageable results." It would make no sense, and indeed invite deviousness and uncertainty, to hold that an attorney general cannot do advisedly what he can do accidentally. Moreover, we have described a third type of case, closely related to an express waiver, where the attorney general, in discharge of his duty as an officer of the court, expresses uncertainty over whether adequate state remedies are available or points out that resort to state courts may be futile, and his expressions are accepted as a waiver of exhaustion. *Westbrook v. Zant; Lamb v. Jernigan; Tolg v. Grimes; Warren v. Connor.*

In *Westbook v. Zant,* for example, the state's answer declared that recourse to state courts on petitioner's unexhausted claims would be futile and went on to address the merits of the unexhausted claims. Further, the state did not mention non-exhaustion in objecting to the district court's ruling on the merits of petitioner's unexhausted claims. Citing *Galtieri v. Wainwright,* 582 F.2d 348, 356 n. 15 (5th Cir. 1978) (en banc), the court held that once a district court has reached the merits of an unexhausted claim and appeal is taken, the appellate court must also entertain the merits. 704 F.2d at 1494.

But the court did not rely on *Galtieri* alone. It mentioned that on appeal, at oral argument, the state expressly waived exhaustion. Noting the state's consistent po-

---

**4.** *Felder* remanded to the district court with instructions to accept the waiver and reach the merits. We leave it in the discretion of the district court whether to accept the waiver. *See* Parts III and IV, *infra. Compare Sweet v. Cupp,* 640 F.2d 233 (9th Cir.1981), discussed *infra.*

**5.** Judge Merritt, dissenting in *Bowen v. Tennessee,* 698 F.2d 241, 245 (6th Cir.1983) (en banc), has set out the reasoning that underlies this approach:

Rule 5 of the rules governing habeas corpus cases in the District Court adopted by

the Supreme Court on April 26, 1976, 28 U.S.C. Sec. 2254, requires the defendant to set out in its answer its position respecting exhaustion of state remedies. Rule 11 of those rules makes the Federal Rules of Civil Procedure applicable. Rule 12(h), Fed.R. Civ.P., provides that the failure to raise a defense other than subject matter jurisdiction shall constitute a waiver of the defense. The defendant by failing to raise the point below has waived its claim that a mixed petition should be dismissed.

sition on exhaustion at both the district court and appellate levels, the court stated: "[The state] obviously seeks resolution [of the unexhausted claims] on the merits." *Id.* In accepting the waiver made by the attorney general on behalf of the state, the court did not rely on a pleading approach. Rather, it focused on the considerations of comity that lie at the heart of Sec. 2254 exhaustion. After concluding that *Rose v. Lundy* did not preclude the state from waiving exhaustion, the court stated:

> In our view, holding that a state may waive exhaustion does not run contrary to the policy considerations of federal-state comity underlying total exhaustion of all constitutional claims initially in the state courts.

704 F.2d at 1494. Because *Westbrook* rests in part on the nature of comity and exhaustion, it lends broad and explicit support to the two conclusions that (1) exhaustion is waivable (2) by the state attorney general.

Finally, Supreme Court cases in areas analogous to habeas exhaustion reinforce the two conclusions mentioned above. The federal habeas rule relating to procedural defaults occurring in state court, *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), provides one analogous situation. Even though the *Sykes* rule is, like exhaustion, founded in part on considerations of comity, the Supreme Court has refused to consider the *Sykes* issue because the state, through its attorney general, has failed to raise it. *See Estelle v. Smith,* 451 U.S. 454, 468 n. 12, 101 S.Ct. 1866, 1876 n. 12, 68 L.Ed.2d 359 (1981); *Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980).

*Younger* abstention furnishes another useful analogy. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that except in extraordinary circumstances a federal court must abstain from deciding issues implicated in an ongoing criminal proceeding in state court. The *Younger* doctrine was subsequently broadened to preclude federal court interference with some types of ongoing civil proceed-

ings in state courts. *See, e.g., Huffman v. Pursue, Ltd,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 479, 97 S.Ct. 1898, 1903, 52 L.Ed.2d 513 (1977), the state attorney general, appearing on behalf of the state raised *Younger* abstention before the district court but abandoned the issue before the Supreme Court, "at oral argument ... resisting the suggestion of [abstention] ...." 431 U.S. at 479, 97 S.Ct. at 1904. The Court noted that although the named appellant was the Ohio Bureau of Employment Services, the appellant in effect was the State of Ohio. 431 U.S. at 477, 97 S.Ct. at 1902. Even though *Younger* abstention is, like Sec. 2254 exhaustion, a comity-based doctrine that arguably springs from deference to state courts, the Court accepted the state attorney general's decision, made on behalf of the state, to submit voluntarily to federal proceedings. It stated:

> It may not be argued, however, that a federal court is compelled to abstain in every such situation. If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's system. In the present case, Ohio either believes that the district court was correct [in concluding that abstention was inapplicable] or, faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings, now has concluded to submit the constitutional issue to this Court for immediate resolution. In either event, under these circumstances *Younger* principles of equity and comity do not require this Court to refuse Ohio the immediate adjudication it seeks.

431 U.S. at 480, 97 S.Ct. at 1904.

Like *Westbrook, Hodory* holds that comity does not categorically prohibit a state from deliberately waiving a rule designed in part to promote state interests.

*(2) The nature of exhaustion and comity.*

Exhaustion of state remedies is not a concept of subject matter jurisdiction but

rather of federalism and comity, intended to give the state the initial opportunity to decide alleged violations of federal constitutional rights. *Hopkins,* 648 F.2d at 983 n. 2; *Felder,* 693 F.2d at 552; *Houston,* 569 F.2d at 375; *Westbrook,* 704 F.2d at 1494 n. 8; *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950); *Fay v. Noia,* 372 U.S. at 420, 83 S.Ct. at 839 (1963) ("The rule of exhaustion is not one defining power but one which relates to the appropriate exercise of power.") (quoting *Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939)). 17 Wright, Miller & Cooper, Federal Practice and Procedure, Sec. 4264 (1978). The question is not of federal power but equitable discretion. *Houston.*

Judge Thornberry, for the Fifth Circuit, in *Felder v. Estelle,* and Judge Higginbotham, concurring in the same decision, and Judge Gibbons in his dissenting opinion in *U.S. ex rel. Trantino v. Hatrack,* 563 F.2d 86, 98, 102–04 (3d Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978), have discussed at length comity as a general principle, and what they have said need not be repeated in full. The doctrine arose in international law where it concerned relationships between independent sovereigns. *Bank of Augusta v. Earle,* 38 U.S. (13 Pet.) 519, 10 L.Ed. 274 (1839); *Felder,* 693 F.2d at 551; *Trantino,* 563 F.2d at 193, (Gibbons, J., dissenting). Comity concerns the recognition that one sovereign extends to the legislative, executive and judicial acts of another. *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). As between nations, "[i]t is not the comity of the courts, but the comity of the nation . . ." *Bank of Augusta, supra,* 38 U.S. (13 Pet.) at 589, 10 L.Ed. at 308. The doctrine applies to "proper relations between sovereign states, rather than between judicial systems." *Felder,* 693 F.2d at 554.

Historically, in the 1960's after *Fay v. Noia,* federal courts urged states to create adequate first-tier collateral review if they lacked it, on the basis that the states were entitled, and often better able, to have the initial opportunity to review their own cases for constitutional error. The states responded, some by legislative acts, some by decisions. On the federal side, if collateral relief was denied in state court it was easier for the federal court to conduct its second-tier review having before it the prior state collateral decision and record. Nothing has happened in the 20 years since that commands a state to go through the first tier of review in a particular case even though, as Judge Gibbons puts it in his dissent in *Trantino,* it is "perfectly willing to have [the] case decided in a federal forum now, for the obvious common sense reason that it must ultimately be resolved in a federal forum in any event." 563 F.2d at 101.

The nature of comity between national and state sovereignties in our federal system, as applied to the exhaustion doctrine in two-tier collateral review, necessarily implies power of the state to waive its right of initial review. Federal support of initial review in the state courts is not primarily to vindicate federal interests but in large measure arises out of deference to state interests. *Trantino,* 563 F.2d at 95. It is designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203, 71 L.Ed.2d at 387. Exhaustion is intended to give the state the *opportunity* for initial review. In particular cases the state may decide that its role is better performed, and its judicial proceedings disrupted less, by foregoing the opportunity of initial review. This is especially true where the state system already has performed elaborate initial review for the state petitioner—as it has for Thompson—and would be required to crank up its system again to examine his newest claims. The state might wish to invoke the abuse of the writ doctrine, but its judicial system would have to exercise its collateral review jurisdiction in order to consider application of the doctrine. Moreover, findings of abuse of the writ are themselves difficult to sustain because of liberality toward pro se pleaders, changes in counsel, and the instinctive reaction of courts that a petitioner

ought to be given a merits ruling on a constitutional issue. Additionally, a state denial of relief based on abuse of the writ grounds is antithetical to finality simply because it is not on the merits; a federal court may find it erroneous and, in a renewal of the ping pong game, hold that the state court must initially review the merits.

■ The state, then, must be allowed to assert that it wishes to forego the opportunity for initial review in those instances where initial review operates to its disadvantage. It is entitled to decide that this best vindicates its interests. (We discuss in Part IV our conclusion that the court is not required to accept the state's tender of waiver.) There is an element of Big Brotherism for a federal court to say, with respect to a principle that protects state institutions and values, that as a matter of federal law the state does not have the power to assert a desire to eschew application of the principle when it operates to its injury. This stands comity on its head and promotes state-federal disharmony. This is not to say that the contour and scope of the comity that exhaustion involves are not federally defined, but rather that a definition which ineluctably bars state waiver is wrong.

Both *Felder* and *Westbrook* hold that *Rose v. Lundy* does not preclude state waiver of exhaustion. *Felder*, 693 F.2d at 554 (*Rose* did not "address or even contemplate" the issue of state waiver). *Westbrook*, 704 F.2d at 1493 ("*Rose v. Lundy* provides no instruction for the situation where the state fails to raise the lack of exhaustion."). We agree.

■ In adopting a total exhaustion rule the Court in *Rose* spoke of the desirability of giving state courts the *opportunity* to first pass upon and correct a constitutional violation. The Court stressed the importance of "minimizing friction between our federal and state systems of justice" by allowing the state "an initial opportunity" to act. There is no suggestion that the state's interest cannot be vindicated by passing up the opportunity when it elects to do so or that the extension of the opportunity is in fact an irrevocable mandate that the state court must act first.

Our decision is not limited to habeas cases where the death penalty has been imposed. But the death penalty cases starkly demonstrate the desirability of permitting state waiver of exhaustion. In at least some death penalty cases, construing *Rose* to forbid waiver will frustrate the goal of that decision, which is the avoidance of piecemeal litigation by encouraging habeas petitioners to exhaust all claims in state court and present the federal court with a single habeas petition.[6] One of the premises of *Rose* is that the habeas petitioner desires speedy federal relief on his claim and that requiring plenary state court exhaustion, as a prerequisite to a federal determination, will advance him toward that end. This premise fits the petitioner in confinement under a sentence for years, whose purpose is to gain release from confinement. It does not necessarily fit the prisoner under death sentence whose purpose may be to stay alive.[7] He may desire to delay a final

6. The Eleventh Circuit has a particularly strong interest in the proper handling of death penalty habeas cases, to assure that the Constitution of the United States has been complied with in the arrest, trial, conviction and sentence of the prisoner and at the same time to assure that institutional and public interests in finality of decision are given correct weight. The number of prisoners under death sentence in the United States is approximately 1,100 to 1,200. Approximately one-third of these are in the three states of the Eleventh Circuit.

7. The Supreme Court this term, in a somewhat different context, recognized the possibility that a death row inmate may attempt to use federal habeas review as a vehicle to delay implementation of his sentence. In *Barefoot v. Estelle*, —— U.S. ——————, 103 S.Ct. 3383–3391, 77 L.Ed.2d 1090 (1983) (quoting *Lambert v. Barrett*, 159 U.S. 660, 662, 16 S.Ct. 135, 40 L.Ed. 296 (1895)), the Court stated: " 'It is natural that counsel for the condemned in a capital case should lay hold of every ground which, in their judgment, might tend to the advantage of their client ....' " The Court also discussed procedures that may be used to minimize potential delays. Because, "unlike a term of years, a death sentence cannot be carried out by the state while" federal appellate review is pending and because "federal habeas

federal ruling by raising in succession a series of unexhausted claims. Until the final, ultimate federal determination his sentence may not be carried out because state and federal courts may have to enter stay orders until they can examine the merits of his claims. *See Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Sending such a petitioner back to the state system to exhaust a new claim gives him a reprieve from finality.[8] Each delay, for its span, is a commutation of a death sentence to one of imprisonment.[9] By waiving exhaustion the state can seek to move the case toward the ultimate federal decision. By accepting or declining the waiver, *see* Part III *infra,* the federal court can limit waiver to appropriate cases and issues.[10] No invasion of state interests is involved but rather an acceptance by the state that its interests will be suitably vindicated in the federal proceeding. In short, *Rose* is a tool that protects state and federal interests. It is not a trap for both sovereigns.

The best known case that views comity in our state-federal system differently than we do is *Trantino,* which holds that exhaustion as an instrument of comity serves interests not of state prosecutors but of state courts and therefore may not be waived by the attorney general of New Jersey. 563 F.2d at 96. *Naranjo v. Ricketts,* 696 F.2d 83 (10th Cir.1982) and *Bowen v. Tennessee,* 698 F.2d 241 (6th Cir.1983) (en banc) adopt this same rationale. *See also Sweet v. Cupp,* 640 F.2d 233, 237 n. 5 (9th Cir.1981); *Needel v. Scafati,* 412 F.2d 761, 766 (1st Cir.1969).

With deference, it seems to us that describing the issue as a choice between the interests of a state prosecutor and interests of state courts asks the wrong question. Rather we believe that the question is more precisely put in two parts: does exhaustion serve the interests of the state and its sovereignty or of only state courts and judges? And, whoever the beneficiary of the state's interests, is the state attorney general authorized to waive for that beneficiary?

 With respect to the first question, just as Judge Gibbons, dissenting in *Trantino,* we have difficulty identifying the doctrinal basis for the conclusion that comity in a habeas case means not comity between sovereigns but a different and narrower concern over the delays associated with federal habeas review in death cases.

> Another disconcerting situation to which the Conference Committee on Habeas Corpus originally addressed itself was the delays in executing State court sentences in capital cases as a result of habeas corpus applications seeking review of State court action
> . . . .

H.Rep. No. 1892, 89th Cong., 2d Sess. 5 (1966).

---

8. Judge Brown of the Fifth Circuit has aptly described the tension between exhaustion and finality in habeas cases:

> New restrictive rules emerge, nearly all of which are designed to require that the case must have been fully exhausted in the state tribunals as a condition for federal court review. Commendable as those so-called technical rules are in reducing opportunities for abuse of the Great Writ, each has within itself further complications including repeated appeals.

Brown, *Is There an End in Sight in the Captain's Spyglass? The Quest for Finality,* forthcoming in 48 Air Law & Commerce —— (1983).

9. A congressional committee examining the federal habeas corpus statute has expressed

[is not] a means by which a defendant is entitled to delay an execution indefinitely," *id.,* the Court admonished federal courts to identify cases "where constitutional error requires retrial or resentencing as certainly and swiftly as orderly procedures will permit." —— U.S. at ——, 103 S.Ct. at 3391. *Barefoot* holds that appellate courts may adopt expedited procedures in resolving the merits of habeas appeals.

10. While the district judge in this case was addressing the matter of continuance rather than of exhaustion, in his thoughtful and carefully drawn order he considered *Rose v. Lundy* and *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir.1978) (en banc), as applied to the unique characteristics of a death penalty case. He chose the option of a continuance while petitioner exhausts the two new claims, because, he found, it was most consistent with the underlying policies of the exhaustion requirement when applied to a death penalty challenge. Permitting waiver of exhaustion furthers the same considerations though in a different manner.

comity limited to courts and judges.[11] Of course, the state courts' first opportunity to review is a concept that has originated with one judicial system,[12] the federal, and has impacted on another judicial system, the state's. But the identity of governmental actors extending and receiving deference is not the measure of sovereignty or of comity between sovereigns. First opportunity to review is extended to judges in New Jersey not merely because they are judges but because they are judges of the state of New Jersey. The interests are those of the state though executed by judges. Comity, as reflected in Sec. 2254, undoubtedly promotes the interests of state courts, but this is merely one aspect of comity's broader purpose of maximizing the control that a sovereign state has over its criminal justice system. *See Sandalow, Henry v. Mississippi and the Adequate State Ground: Proposals for a Revised Doctrine,* 1965 Sup.Ct.Rev. 187, 213–14; Brennan, *Some Aspects of Federalism,* 39 N.Y.U.L.Rev. 945, 957–58 (1964); Meador, *Accommodating State Criminal Procedure and Federal Postconviction Review,* 50 A.B.A.J. 928, 929 (1964).

■ There are many identifiable and important state interests implicated in the interplay of the two-tier collateral relief system that reach far beyond the interests of state courts and judges. In the present case the attorney general, as Florida's chief legal officer, is interested in the prompt and effective administration of the state's criminal laws and in finality as a part thereof. The governor has a like interest, particularly in death penalty cases where he has a direct, individual responsibility in the proc-

ess. The two-tier system of review affects legislative funding for prisons. It inevitably affects the executive department's administration of Florida's penal system. The respondent in this case is the superintendent of the State Department of Corrections. The attorney general, who must represent the state in its appellate courts and in federal courts, must supply resources—lawyers and staff support—in both systems. The state bears part of the financial burden of fees to public defenders and appointed counsel. The citizenry at large have an interest in prompt and definite finality. While their interest has not been expressed in any "speedy collateral review" statute, the public of Florida have a great interest in prompt determination of the validity of the convictions and sentences of persons who have undergone trial and have been convicted. Comity requires sensitivity, not indifference, to the full spectrum of state interests implicated by federal-state habeas review. There is substantial dissatisfaction in our country with the operation of two-tier collateral review. This is not the place to discuss whether this malaise is justified; the point is that it does not originate from only state courts and state judges and is not limited to assertion of their interests.

■ Of course, neither public nor governmental desire for prompt finality can diminish the principle that criminal convictions and sentences secured in violation of our national Constitution cannot stand. The federal courts must carry out the responsibility assigned to them in two-tier constitutional review, and when conviction

---

**11.** In *Rose* the Supreme Court did describe the role of exhaustion as "to protect the state courts' role in the enforcement of federal law and present disruption of state judicial proceedings." 455 U.S. at 518, 102 S.Ct. at 1203, 71 L.Ed.2d at 387. The Sixth Circuit gave particular weight to this language in *Bowen v. Tennessee, supra.* We believe that this reference to the purpose of exhaustion does not represent the Court's considered judgment that in the context of Sec. 2254 exhaustion comity is limited to the relationship between the judicial branches of state and federal governments.

Even if we were to read the language in *Rose* literally, it is entirely consistent with our hold-

ing that Florida's attorney general is authorized by Florida law to waive the interests of state courts and judges.

**12.** The habeas exhaustion requirement originated in judicial decisions. Sec. 2254 was intended simply to codify "existing law as affirmed by the Supreme Court" in *Ex parte Hawk,* 321 U.S. 114, 117, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944). H.Rep. No. 308, 80th Cong., 1st Sess., A180 (1947) (Reviser's Notes). *See Rose v. Lundy,* 455 U.S. 509, 515–516 & n. 8, 102 S.Ct. 1198, 1201–1202 & n. 8, 71 L.Ed.2d 379, 385–386 & n. 8 (1982).

or sentence does violate the Constitution the court must unflinchingly set it aside. The problem addressed in this case is not the scope or the thoroughness of federal review but whether a state through its duly authorized officer can waive one step in two-tier review in an effort to secure a more prompt final decision from the forum that predictably will be the ultimate forum on the constitutional issue.

■ With respect to the second prong of the rephrased question, relating to the authority of the attorney general to waive, we hold that Florida law empowers the attorney general to represent the interests of the sovereign. *See* Part II, A *supra*. We hold alternatively that even if comity is limited to state courts and judges, the Florida attorney general has the power to speak for their interests. A contrary holding cannot be reconciled with the state law we have discussed previously. *Id.*[13] Moreover, state courts and judges are neither parties nor counsel in habeas cases, and if the state's chief legal officer cannot speak for them, no one can. Refusing to permit waiver by the attorney general is tantamount to a blanket prohibition against waiver of exhaustion, and, in federal habeas cases, converts the flexible concept of comity into a hard and fast jurisdictional requirement. If exhaustion were truly jurisdictional, we could not properly dispense with it as we do in cases where state courts have had the opportunity to address the merits of petitioner's constitutional claims but have not done so. *Francisco v. Gathright,* 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Houston v. Estelle,* 569 F.2d 372 (5th Cir. 1978); *West v. Louisiana,* 478 F.2d 1026, 1034 (5th Cir.1973) (long and unjustified delay in the particular case), *aff'd in pertinent part,* 510 F.2d 363 (5th Cir.1975) (en banc). We could not accept acknowledg-

ments by attorneys general that state remedies are ineffective or state procedures futile without examining and ruling on the substantive correctness of each acknowledgment. *See* Part II, B(1) *supra*. We could not entertain a petition where there has been an intervening change in state law since petitioner exhausted. *Roberts v. La-Vallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). There could not be an "unusual circumstances" exception to exhaustion, such as *Trantino* itself recognizes. 563 F.2d at 96. "The policies that the exhaustion rule serves are important. . . . [but a court] need not make a fetish of exhaustion." 17 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 4264, at 653–54 (1978).

### (C) Summary.

The prior case law of the former Fifth Circuit, this circuit and the Supreme Court, the nature of comity and exhaustion, and Florida law coalesce in support of our holdings that exhaustion can be waived and that the Florida attorney general may validly make the waiver decision on behalf of the state.

■ There is no merit to the argument of petitioner that the state cannot waive, or the district court accept waiver, because he has an absolute right conferred by Sec. 2254 or the Constitution that his case be given both levels of review. He has no right to control the operation of the comity-rooted system.

### III. Discretion of the district court to accept the waiver.

■ We hold that the district court in its discretion may accept the waiver of exhaustion in a habeas case as to any one or more issues or may reject it.[14] The power of the state to decide that exhaustion dis-

---

**13.** *Trantino* assumes, without examination of state law, that the New Jersey attorney general had no authority to appear and speak for the state courts and judiciary to the extent that they might have a special interest in a habeas case.

**14.** *Westbrook* did not decide this issue:

We do not address the issue of whether a district court is bound by a state's waiver of exhaustion when the district court believes exhaustion would not be futile or evidentiary development would be aided by dismissing the federal petition until the state courts have been given an opportunity to entertain the petitioner's claims.
704 F.2d at 1494 n. 9.

serves its interests is not an unqualified right to force the federal forum to litigate all issues without state review.

 Comity is not a one way street. "The notion of comity which underlies the exhaustion doctrine must be understood not as a capitulation of federal power to state interest; rather, comity involves a delicate compromise of both state and federal concerns." *Carter v. Estelle,* 677 F.2d 427, 442 (5th Cir.1982). Strong federal interests may exist that, balanced against those of the state in the particular case, will permit the district court in its discretion to decline a waiver and require state exhaustion. An unconditional right of waiver would increase the burden on the federal system. In a particular case, fact finding on the issues with respect to which waiver is asserted may be done best in the state court. The complete factual record will aid the federal court in its review. *Rose v. Lundy,* 455 U.S. at 519, 102 S.Ct. at 1203–1204, 71 L.Ed.2d at 388. When state courts initially address requests for collateral relief some cases will never reach the federal courts, for the state courts will recognize constitutional violations and grant relief. Other cases will be abandoned or mooted. Moreover, while Sec. 2254 reflects deference to state fact finding, the exhaustion requirement increases state courts' familiarity with and hospitality to federal constitutional claims. *Id.*

Federal courts too have an interest in prompt and effective finality. But the court must have discretion to see whether waiver will further that aim and to balance it with other factors. The court may consider whether extensive or minimal fact finding is involved or only questions of law on an already adequate record and, if fact finding is involved, whether it may be done as part of a federal hearing required on other issues. The court may consider how long since petitioner's conviction and sentence were imposed, how long state exhaustion will require, and the comparative status of the dockets of federal and state courts. The court may give weight to whether there are fundamental state poli-

cies at stake in the case or threshold issues of undecided state law. In *Sweet v. Cupp,* 640 F.2d 233, 237 (9th Cir.1981), the attorney general acknowledged in district court that exhaustion was futile and the district court accepted this as a waiver. On appeal the Ninth Circuit held that the attorney general's concession was not binding on the court and that the district court should have required first-tier state court review of the constitutionality of the state criminal statute whose validity was in question. We agree with this approach.

 The federal district court, if it declines to accept the waiver, would not, as the state seems to believe, compel Florida courts to adjudicate the unexhausted claims. It would simply ensure that state courts have the opportunity to decide those claims, and the decision would not displace state rules regarding summary dismissals or successive writs.

### IV. Conclusion.

We turn to the disposition of this case. We hold that the district court had authority to grant the motion for continuance pending exhaustion of Thompson's new claims in state court. We hold that in a habeas case the attorney general of Florida may explicitly waive exhaustion of state remedies on behalf of the state sovereign and the state courts. We hold that the district court, in its discretion, may accept or reject the waiver.

 As to the district court's treatment of the waiver, the continuance order itself does not reveal whether the court considered the state's decision to waive exhaustion. A subsequent order staying the case pending appeal, however, indicates that the district court was aware of the state's waiver when the continuance order was entered but, without discussion, did not accept it. *See* note 2 *supra.* We are unable to determine whether the district court's rejection of waiver was proper, because we do not know whether it rejected the waiver because it decided that the state, through its attorney general, could not waive exhaus-

tion or because it thought exhaustion would aid federal review. While we imply no view on whether the court should accept or reject the tendered waiver, it is appropriate that we vacate the decision and order of the district court so that it can again consider, under the principles we have set out, whether to accept or reject the waiver.

VACATED and REMANDED for proceedings consistent with this opinion.